IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

GREG VELLIOS and LYNN VELLIOS                                    PLAINTIFFS

V.                      CASE NO. 3:19-CV-03071-TLB

THE FARMERS AND MERCHANTS BANK, et al.,                          DEFENDANTS

MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss filed by Separate Defendant The Farmers and Merchants Bank ("Bank") (Doc. 16).[1] Plaintiffs Greg and Lynn Vellios filed a Response, and the matter is now ripe for consideration. For the reasons set forth below, the Court **GRANTS** the Bank's Motion to Dismiss (Doc. 16).

I. BACKGROUND

According to the Complaint, the Vellioses entered into a contract (the "Construction Contract") with Bell Construction, Inc. ("Bell Construction") to build a new home and barn in Arkansas (the "Project"). (Doc. 9, p. 2). To finance the Project, the Vellioses borrowed $566,000 from the Bank, which was memorialized by a Loan Agreement that is attached to the Complaint. (Doc. 9, pp. 26–38). The Vellioses allege that the Loan Agreement required the Bank to satisfy itself that the $566,000 was sufficient to build the planned home and barn and to oversee and inspect the Project before disbursing funds to Bell Construction. The Vellioses additionally allege that the Bank breached these obligations

---

[1] The Farmers and Merchants Bank has been substituted for Integrity First Bank, N.A. (Doc. 28).

1

because it disbursed the funds even though the amount disbursed was, in fact, insufficient to complete the Project. Based upon these allegations, the Vellioses' Complaint alleges three counts against the Bank: breach of contract, unjust enrichment, and breach of fiduciary duty. The Vellioses have also brought claims against Bell Construction and its individual officers; however, those claims are not the subject of the present Motion to Dismiss.

The Bank has moved under Federal Rule of Civil Procedure 12(b)(6) for this Court to dismiss the Vellioses' claims against it on the grounds that they have failed to plead sufficient facts to plausibly show that they are entitled to relief.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a pleading must provide "a short and plain statement of the claim showing that [the claimant] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of the Complaint's factual allegations as true. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a [pleading] suffice if

2

it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* In other words, while "the pleading standard that Rule 8 announces does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.* Finally, documents necessarily embraced by the Complaint—such as "exhibits attached to the complaint whose authenticity is unquestioned"—may be considered by the Court without converting a Rule 12(b)(6) motion into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)).

## III. DISCUSSION

### A. Breach of Contract Claim

According to the Bank, the Vellioses' breach of contract claim must be dismissed because the Loan Agreement, read as a whole, did not obligate the Bank to determine whether $566,000 was sufficient to complete the Project or to supervise, inspect, or otherwise oversee the Project. The Vellioses, however, argue that the Loan Agreement obligated the Bank to determine that $566,000 was sufficient to complete the Project and to determine, prior to making each disbursement, that the Project was staying within budget.

At the heart of this dispute is a disagreement about the meaning of certain clauses within the Loan Agreement. "When a contract is unambiguous, its construction is a question of law for [the] court." *Artman v. Hoy*, 257 S.W.3d 864, 869 (Ark. 2007). "[I]f the writing contains a term which is ambiguous, parol evidence is admissible and the meaning of the ambiguous term becomes a question of fact for the factfinder." *First Nat'l Bank of*

*Crossett v. Griffin*, 832 S.W.2d 816, 819 (Ark. 1992). "Language in a contract is ambiguous when there is doubt or uncertainty as to its meaning or it is fairly susceptible of two interpretations." *Denton v. Pennington*, 119 S.W.3d 519, 521 (Ark. 2003). Any ambiguities in a contract are to be construed strictly against the drafter. *Byme, Inc. v. Ivy*, 241 S.W.3d 229, 236 (Ark. 2006).

The Loan Agreement contains the following paragraphs under the heading "Conditions Precedent To All Loan Disbursements":

- "Construction Lender shall have determined that the undisbursed Loan proceeds, less any reserves, plus any deposits made by Borrower under the *Deposits* subsection, will be sufficient to complete the Project in accordance with the Project Plans and Specifications and Project Budget." Loan Agreement, ¶ 8(B).

- "At Construction Lender's sole discretion, Construction Lender, Construction Lender's Inspector, or Construction Lender's agent will have inspected the Project and have found that the Project at that time reflects that the Improvements are being constructed on schedule and in accordance with the Plans and Specifications provided for in this Agreement . . . . Construction Lender is under no obligation to supervise, inspect or inform Borrower or Owner of the progress of construction, and neither Borrower nor Owner will rely upon Construction Lender. Therefore, Construction Lender will incur no liability or obligation to Borrower or Owner arising out of such inspection. All Construction Lender's inspections and approvals are solely for Construction Lender's own benefit and may not be relied upon by any third party." Loan Agreement, ¶ 8(E).

According to the Vellioses, Paragraph 8(B) suggests that the Bank had some kind of ongoing obligation to review the Project and, prior to each disbursement of funds to Bell Construction, ensure that the remaining balance would be sufficient to complete the Project. Paragraph 8(E) of the Loan Agreement, however, says that the Bank had no obligation to inspect the Project. The Bank also points the Court to paragraph 13(I) of the Loan Agreement, which states that the Bank was "not obligated to inspect, supervise,

4

prevent Construction Liens, or inform Borrower or Owner about the Project's progress or performance." Loan Agreement, ¶ 13(I).

In the Court's view, these provisions are not ambiguous when read as a whole. "[I]t is well settled that a contracting party may unilaterally waive a provision of the contract, including, as a general rule, any condition precedent which has been placed in the contract for that party's benefit." 13 Williston on Contracts § 39:24 (4th ed.). Here, Paragraph 8(B) is a condition precedent solely for the benefit of the Bank. Therefore, the Bank may unilaterally waive Paragraph 8(B) without being in breach of the Loan Agreement. The Loan Agreement therefore contains no provisions that require the Bank to oversee the Project's progress and confirm that the borrowed funds were sufficient to complete the Project. The Court therefore concludes that the Loan Agreement means what it unambiguously says: The Bank was under no obligation to confirm that the borrowed funds were sufficient to complete the Project or oversee the progress of the Project. Accordingly, the Court finds that dismissal of the Vellioses' breach of contract claim is appropriate under Rule 12(b)(6).

## B. Unjust Enrichment Claim

Next, the Bank argues that the Vellioses' unjust enrichment claim should be dismissed because there is an express contract—the Loan Agreement—and because the Vellioses have failed to sufficiently allege a plausible claim for unjust enrichment under Arkansas law. The Vellioses respond that their unjust enrichment claim is made in the alternative to any express contract claim.

Unjust enrichment is an equitable remedy based on a quasi-contract. *See First Nat'l Bank of DeWitt v. Cruthis*, 203 S.W.3d 88 (Ark. 2005). A plaintiff may not recover

5

on quasi-contract claims where there is an express contract for the very same subject matter for which he seeks recovery. *See Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 210 S.W.3d 101 (Ark. 2005). On the other hand, "[w]hen an express contract does not fully address a subject, a court may employ its equitable powers to fashion a remedy and to further justice." Brill, 1 Arkansas Law of Damages § 31:2 (2019).

Here, there is no dispute that an express contract exists; further, as discussed above, the Loan Agreement unambiguously provides that the Bank had no obligation to oversee, inspect, or manage the budget of the Project. While the Court acknowledges that the Vellioses may assert alternative theories in their Complaint, *see* Rule 8(d)(2), the substance of the Vellioses' unjust enrichment claim is the same as the breach of contract claim. For these reasons, the unjust enrichment claim must also be dismissed.

### C. Breach of Fiduciary Duty

The Bank next argues that the Vellioses have failed to sufficiently allege a claim of breach of fiduciary duty. The Court agrees.

"A person standing in a fiduciary relationship with another is subject to liability to the other for harm resulting from a breach of the duty imposed by the relationship." *Cherepki v. Walker*, 913 S.W.2d 761, 767 (Ark. 1996) (citing Restatement (Second) of Torts § 874 (1979)) (other citations omitted). "The elements of a fiduciary relationship are three-fold: (1) the first party, that is, the beneficiary or the principal, must place trust and confidence in the second party, the fiduciary; (2) the fiduciary actually accepts that trust and confidence; and (3) as a result of the placement of that trust, the fiduciary acquires influence and superiority over the principal." Brill, *supra*, § 15:3. "Ordinarily, the relationship between a bank and its customer is one of debtor and creditor." *Farm Credit*

*Midsouth, PCA v. Bollinger*, 548 S.W.3d 164, 173 (Ark. 2018) (citing *Mans v. Peoples Bank*, 10 S.W.3d 885 (Ark. 2000)). "For a fiduciary relationship to exist, [the Arkansas Supreme Court] has emphasized the necessity of factual underpinnings to establish a relationship of trust between a bank and its customers." *Knox v. Regions Bank*, 286 S.W.3d 737, 741 (Ark. Ct. App. 2008) (citing *Mans*, 10 S.W.3d at 889). "Contracting parties do not necessarily owe fiduciary duties to each other." *W. Memphis Adolescent Residential, LLC v. Compton*, 374 S.W.3d 922, 927 (Ark. Ct. App. 2010) (citing *Evans Indus. Coatings, Inc. v. Chancery Ct. of Union Cnty.*, 870 S.W.2d 701 (Ark. 1994)).

The Vellioses have failed to allege sufficient facts to support the existence of a fiduciary relationship between themselves and the Bank. The Vellioses argue that a fiduciary relationship arose because the Bank knew that they lived in St. Louis and were relying on the Bank to oversee the Project. In the Court's view, the Bank clearly did not accept this obligation because the Loan Agreement expressly provides that the Bank had no obligation to inspect or oversee the Project. To the extent the Vellioses allege that a fiduciary duty arose because, during construction, Mr. Copeland falsely represented that he was conducting such inspections, the Loan Agreement explicitly states that it "may not be amended or modified by oral agreement." Loan Agreement, ¶ 19. Even assuming that Mr. Copeland made such a statement, given the express language of the Loan Agreement, the Court finds it difficult to understand how the Vellioses could have trusted the Bank to inspect the Project. For these reasons, the Court concludes that the Vellioses have failed to allege that their lender-borrower relationship with the Bank was transformed into a fiduciary relationship. The Vellioses' claim for breach of fiduciary duty is therefore dismissed.

### D. Punitive Damages

Finally, the Bank argues that the Vellioses have not plausibly alleged any intentional conduct that would form the basis of punitive damages, and therefore the Vellioses' claim for punitive damages should be dismissed. The Vellioses respond that their claim for breach of fiduciary duty is an intentional tort and is sufficient to subject the Bank to punitive damages. As there are no remaining claims against the Bank, the request for punitive damages is dismissed.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Bank's Motion to Dismiss (Doc. 16).

**IT IS SO ORDERED** on this 27th day of January, 2020.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE